In the United States District Court
for the Central District of Illinois
Peoria Division

| | |
|---|---|
| Bennett Racing Simulations, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Flying Squirrel Games Malta Ltd.,<br><br>Defendant. | Case No.  26-cv-1075 |

**Complaint and Jury Demand**

Plaintiff Bennett Racing Simulations, LLC, by and through counsel, complains against Defendant Flying Squirrel Games Malta Ltd.:

**Nature of the Action**

1. This is an action for:

    a. Trademark infringement and unfair competition under Section 43(a) of the Lanham Act;

    b. Declaratory judgment of non-infringement of copyright under the U.S. Copyright Act;

    c. Breach of fiduciary duty under Illinois law; and

    d. Dissolution of partnership and accounting under Illinois law.

2. Plaintiff's claims arise out of Defendant's misuse of the DIRT TRACKIN brand and its misconduct in the parties' joint venture.

1

## Parties

3. Plaintiff Bennett Racing Simulations, LLC ("**BRS**") is a Florida limited liability company that was originally formed as an Illinois limited liability company in 2015 and converted to a Florida entity in 2024.

4. Defendant Flying Squirrel Games Malta Ltd. ("**FSG**") is a Maltese company with its principal place of business in Attard, Malta.

## Jurisdiction and Venue

5. This is an action for trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act [15 U.S.C. § 1125(a)], see Count 1.

6. This action also concerns the application of the U.S. Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*), see Count 2.

7. This Court therefore has subject matter jurisdiction over Counts 1 and 2 of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves substantial claims arising under the federal Lanham Act and the U.S. Copyright Act.

8. This Court also has alienage jurisdiction [28 U.S.C. § 1332(a)(2)] over BRS's claim in Count 3 against FSG for breach of fiduciary duty under Illinois law, 805 ILCS 206/404, 405(c)(2)(i).

9. FSG is a foreign entity and BRS a U.S. entity.

10. The amount in damages for this claim exceeds $75,000, exclusive of interest and costs.

11. This Court also has supplemental jurisdiction (28 U.S.C. § 1367) over Counts 3 and 4 for breach of fiduciary duty and dissolution of the parties' partnership and accounting under Illinois law. Both claims are so related to the other claims in this action that they form part of the same case or controversy under Article III of the U.S. Constitution.

12. This Court has specific personal jurisdiction over FSG.

13. FSG contracted with BRS in Illinois and this District to form the parties' joint venture.

14. FSG also offers and promotes the mobile games at issue in this dispute in Illinois and this District, notably through Defendant's interactive website at the following domain: https://flying-squirrel-games.com/#games.

15. The mobile game at issue in this dispute has been purchased from the Nintendo Switch store and delivered into this District.

16. The mobile game at issue in this dispute has been purchased from the Android Google Play store and delivered into this District.

17. Venue is proper in this district under 28 U.S.C. § 1391(c)(3) because FSG is not a resident of the U.S. and may be sued in any judicial district.

18. Venue is also proper under § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## Factual Allegations

19. In 2014, Timothy Bennett had an idea for a mobile dirt-oval racing game that simulates real short-track racing.

20. Mr. Bennett designed this game and named it DIRT TRACKIN.

21. Anthony Demanuele is a programmer who Mr. Bennett hired part time to help write the code for the DIRT TRACKIN game.

22. Mr. Bennett, with the help of another programmer, had already designed and developed the models, tracks, textures of the DIRT TRACKIN game, and some of the underlying programming was already in place.

23. In or about November 2014, Mr. Bennett released the original DIRT TRACKIN game for iOS and Android devices.

24. Around this time, Mr. Demanuele, without Mr. Bennett's knowledge, put the PlayFab player accounts for the DIRT TRACKIN game into Mr. Demanuele's name.

25. PlayFab player accounts are centralized cloud-hosted profiles that identify, authenticate, and manage game users across platforms.

26. On January 1, 2015, Mr. Bennett formed BRS as an Illinois limited liability company.

27. BRS assumed ownership of the DIRT TRACKIN game along with the DIRT TRACKIN brand.

28. In February 2015, Mr. Demanuele formed FSG.

29. Mr. Demanuele then abruptly left the DIRT TRACKIN project and only agreed to continue working for BRS on the DIRT TRACKIN game if FSG received a commissioned base pay of 30% of BRS's revenue from the game.

### Expansion of DIRT TRACKIN game

30. In or around 2017, BRS expanded the DIRT TRACKIN line by releasing the DIRT TRACKIN Sprint Cars game, a separate mobile title focused on sprint-car dirt racing, with new cars and additional oval tracks.

31. By no later than 2019, the DIRT TRACKIN game had a substantial player community, as reflected in an active social-media presence and anniversary posts marking the original game's multi-year history.

32. On November 21, 2019, an upgraded sequel DIRT TRACKIN 2 game was released on mobile platforms.

### Formation of Joint Venture and Partnership

33. In 2020, BRS and FSG formed a joint venture and partnership (the "**Partnership**") to develop and commercialize the DIRT TRACKIN games.

34. BRS and FSG agreed to share profits and losses equally.

35. BRS and FSG agreed to jointly manage key business decisions.

36. BRS and FSG agreed to joint control over key assets (i.e. accounts and software code).

### The DIRT TRACKIN 3 game

37. In or around early 2021, the Partnership began developing the DIRT TRACKIN 3 game.

38. The DIRT TRACKIN 3 game was supposed to be launched in 2022, but because of the COVID-19 pandemic, the Partnership agreed to launch the game in or around November 2023.

39. BRS completed its work on the DIRT TRACKIN 3 game by the agreed deadline in 2023.

40. FSG, however, did not finish its work in 2023 as agreed.

41. BRS informed FSG that it would need the DIRT TRACKIN 3 game finished by December 25, 2024, or the Partnership would run out of money and could no longer afford further development costs.

42. FSG did not complete its work by December 25, 2024.

43. On information and belief, FSG continued to accrue development costs after December 25, 2024, without Partnership approval.

44. These accrued costs after December 25, 2024, were not approved by the Partnership.

45. In May 2025, although FSG had not yet completed its work on the DIRT TRACKIN 3 game, FSG informed BRS that its work was complete and that the game was ready to launch.

46. Based on FSG's representations that it had completed its work on the game, BRS agreed to launch the DIRT TRACKIN 3 game.

47. On launch day, FSG activated aggressive wall friction on the straights (i.e. sticky walls that would bring player cars to a stop) without notifying BRS. This infuriated the players of the game.

48. FSG also failed to conduct a proper performance profile (this is where code is optimized and any errors or issues are resolved from a performance standpoint).

49. The game had serious coding flaws, including but not limited to:

6

a. The game was missing the "overtaking" feature, i.e. one car's ability to pass another.

b. The Player Avoidance code was turned off; this code allows the AI cars (computer cars) to actively avoid the player car (the result: AI cars were always crashing into the player car).

c. "Recovery code" was activated; this code is built so when the player car crashes the AI car, it recovers and is put back on the track (the issue is that in a small track game like the DIRT TRACKIN 3 game, recovery is not feasible and severely slows down the game and hampers the AI cars' behavior). FSG activated this code without BRS's knowledge despite players being told that this code would not be activated.

50. As a result of these flaws, the Partnership received a plethora of negative reviews and angry correspondence from players.

51. On or about June 1, 2025, BRS brought in and separately paid for a third-party programmer consultant to review the game and help remedy the issues with the coding.

52. But FSG refused to provide BRS with file access to all of the DIRT TRACKIN games, which notably prevented BRS from reviewing the DIRT TRACKIN games.

53. On information and belief, FSG incurred development costs to avoid granting this access.

54. On or about June 20, 2025, FSG updated the DIRT TRACKIN 3 game.

55. FSG's June 20th update sped up the AI cars to an unrealistic velocity, essentially "killing" the game.

56. FSG refused to share with BRS relevant data about the updated game, e.g. why there was such a speed increase to the AI cars.

57. On or about July 21, 2025, BRS informed FSG that as a result of the catastrophic launch and update of the DIRT TRACKIN 3 game and defective coding, the Partnership no longer had sufficient funds to pay those previously working on the coding for FSG.

58. FSG then abruptly stopped working on the DIRT TRACKIN 3 game forcing BRS to bring in a new programmer.

59. This new programmer was able to identify most of the issues with the code for the DIRT TRACKIN 3 game.

60. During this time, FSG also demanded that BRS pay FSG its 2025 development costs despite the fact that the Partnership had not approved any costs after December 25, 2024.

61. And when BRS asked FSG for documentation to support the amount of these development costs, FSG refused to provide this documentation.

62. After August 2025, FSG stopped responding to player correspondence and did not inform BRS about these players' correspondence.

63. FSG had all player correspondence concerning the DIRT TRACKIN games going to an FSG email address and therefore BRS was unable to access these communications.

64. On or about November 1, 2025, FSG shut down all of the player accounts for the DIRT TRACKIN 3 game and the multiplayer accounts for DIRT TRACKIN Sprint Cars and DIRT TRACKIN 2 games for six full days.

65. On or around November 1, 2025, FSG posted the following message on Facebook:

> IMPORTANT ANNOUNCEMENT
> Dear Racers, after more than 10 incredible years of working together to bring Dirt Trackin' 1, Sprint Cars, DT2, and DT3 to life, we need to share some difficult news.
>
> Flying Squirrel Games is no longer in partnership with BRS - a decision that was not made by us.
>
> During the final stretch of DT3's development, our relationship with BRS deteriorated. Our team has gone nearly 11 months without full payment, working under immense pressure and seeing parts of our work unfairly portrayed in a negative light. Despite that, we pushed through - completing DT3, maintaining servers for all games, hosting events, and supporting players because we care about this community.
>
> We've stayed quiet for almost a year, but it's time to be transparent. We're doing everything possible to reach a fair resolution, though progress requires cooperation from both sides.
>
> How you can help:
> Your voice matters. If you want to support, we encourage you to reach out to BRS and urge them to act in good faith toward a fair solution.
>
> Follow this page to stay updated as the situation develops - and please share this message with fellow racers to help spread awareness
>
> Thank you for your loyalty and support.
> The FSG Team



66. In addition to this Facebook post, on or around November 1, 2025, FSG also sent a mass email to the DIRT TRACKIN community (players and fans), with a similar message stating that FSG is "...no longer engaged in a partnership with BRS..."

67. Then, on November 12, 2025, FSG, through counsel, sent BRS a letter, attached as **Exhibit A**, alleging that BRS infringed FSG's copyright in the DIRT TRACKIN 3 game, failed to pay FSG its development costs for the DIRT TRACKIN 3 game, and further claimed that BRS's "...acts constitute criminal acts."

68. BRS, through counsel, again requested documentation evidencing the development costs.

69. FSG continues to refuse to provide this documentation.

<u>Nintendo Switch & DIRT TRACKIN games</u>

70. In or around June 2025, FSG launched the DIRT TRACKIN 3 game for the Nintendo Switch and has offered and sold the game to consumers in the U.S., including in this District.

71. FSG identified itself as both the publisher and developer of the DIRT TRACKIN 3 game without BRS's authorization.

72. BRS did not approve of the launch of the DIRT TRACKIN 3 game for Nintendo Switch.

73. BRS specifically told FSG that it did not approve of the launch of the DIRT TRACKIN 3 game for Nintendo Switch.

74. FSG listed the price of the DIRT TRACKIN 3 game at $21.99 over BRS's objection (BRS did not approve of a price over $15).

75. By pricing the game this way, FSG has detrimentally impacted the Partnership's or BRS's ability to sell the DIRT TRACKIN 3 game to higher price point stores (e.g. Steam, Playstation, or Xbox) given the optics.

76. FSG has also identified itself as both the publisher and developer of the DIRT TRACKIN Sprint Cars game and the DIRT TRACKIN 2 game on Nintendo without BRS's authorization.

77. FSG alone has access to the Nintendo account for these DIRT TRACKIN games.

78. Despite multiple requests, FSG did not give BRS full access to the Nintendo account set up for the DIRT TRACKIN games except for financial access. This limited access was removed on or about November 1, 2025.

79. FSG does not have a written license from BRS to use the DIRT TRACKIN mark in connection with mobile games.

80. On February 13, 2026, BRS, through counsel, sent a written demand letter to FSG's counsel directing FSG to cease all unauthorized use of DIRT TRACKIN and related branding, including on FSG's website and in platform listings such as Nintendo, and expressly revoking any implied or non-written license FSG may have claimed to have to use the DIRT TRACKIN mark, see **Exhibit B**.

81. FSG ignored this letter.

82. Despite receiving this written demand and revocation, FSG continues to use the DIRT TRACKIN mark unilaterally, including on its website (see **Exhibit C**) and on Nintendo (see **Exhibit D**), without BRS's consent.

## Claims for Relief

### Count 1:
### Trademark Infringement
### Section 43 U.S. Lanham Act
### [15 U.S.C. 1125(a)]

83. BRS restates and incorporates by reference all its allegations detailed above.

84. BRS owns the DIRT TRACKIN mark in connection with downloadable game software.

85. Since November 2014, BRS has continuously used the DIRT TRACKIN mark in connection with downloadable game software for use on mobile phones and tablets.

86. BRS's DIRT TRACKIN mark is inherently distinctive since it is at a minimum suggestive of the nature of the mobile games offered and sold under this brand.

87. BRS owns U.S. Trademark Application Serial Number 99608590 for the standard character (word) mark DIRT TRACKIN in connection with the following goods: downloadable game software for use on mobile phones and tablets (based on use); and downloadable game software for use on console platforms and computers (based on intent to use), see attached **Exhibit E**.

88. FSG's first use of the DIRT TRACKIN mark was well after BRS first used its DIRT TRACKIN mark, and therefore BRS has prior rights in this mark.

89. FSG is currently using BRS's DIRT TRACKIN mark in U.S. commerce in connection with downloadable game software without BRS's authorization, This includes use of the DIRT TRACKIN mark for games on Nintendo and on FSG's website.

90. Despite BRS's written objection, FSG continues to use the DIRT TRACKIN mark.

91. Such use is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of FSG with BRS, and as to the origin, sponsorship, or approval of FSG's goods and services.

92. As a direct and proximate result of FSG's infringement, BRS has suffered and will continue to suffer irreparable loss of income, profits and goodwill, and FSG has and will continue to unfairly acquire income, profits and goodwill.

93. FSG's acts of unfair competition will cause further irreparable injury to BRS if FSG is not restrained by this Court from further violation of BRS's rights. BRS has no adequate remedy at law.

94. Accordingly, BRS is entitled to injunctive relief, damages, and such other relief as the Court deems just and proper.

**Count 2:**
**Declaratory Judgment**
**Non-Infringement of Copyright: Joint Ownership**
**[ 28 U.S.C. § 2201 & 17 U.S.C. § 501]**

95. BRS restates and incorporates by reference all its allegations detailed above.

96. FSG, through counsel, has threatened BRS with legal action and criminal sanctions for purported unlawful copying of source code, server code, and "source art assets" used in the DIRT TRACKIN 3 game in connection with an alleged independent release of the DIRT TRACKIN 3 game.

97. The DIRT TRACKIN 3 game was prepared by both BRS and FSG with the intention that each party's contributions be merged into inseparable interdependent parts of a unitary whole.

98. BRS's contributions to the DIRT TRACKIN 3 game included the gameplay design and underlying gameplay engine that controls in-race behavior, physics, and the overall user experience.

14

99. FSG's contributions to the DIRT TRACKIN 3 game consisted of the technical systems and infrastructure surrounding that gameplay, including coding and server-side logic necessary to deploy, host, and operate the game for end-users.

100. BRS and FSG had a mutual understanding that their contributions would result in a single DIRT TRACKIN 3 game.

101. The DIRT TRACKIN 3 game is thus a "joint work" as that term is defined under the U.S. Copyright Act.

102. BRS as a co-owner of the copyright in the DIRT TRACKIN 3 game has an equal undivided interest in the entire work and an independent right to use the work.

103. BRS therefore could not have infringed FSG's copyright in the DIRT TRACKIN 3 game even if BRS copied and independently released the game.

104. BRS thus seeks a declaration that the DIRT TRACKIN 3 game is a joint work and that BRS is a co-owner with an undivided interest in the entire work, and that BRS's exploitation of the work does not infringe any copyright of FSG.

### Count 3:
### Breach of Fiduciary Duty under Illinois law
### [805 ILCS 206/404, 405(c)(2)(i)]

105. BRS restates and incorporates by reference all its allegations detailed above.

106. BRS and FSG entered into a valid and enforceable agreement governing their development, publishing, and commercialization of the DIRT TRACKIN games.

107. Implied in the parties' agreement is a covenant of good faith and fair dealing requiring each party to act honestly, fairly, and in a manner that does not deprive the other of the benefits of the bargain.

15

108. FSG breached its implied covenant of good faith and fair dealing by, among other things:

    a. Exercising discretion over product launches, pricing, and platform listings in a manner designed to benefit itself and to frustrate BRS's economic expectations;

    b. Unilaterally accruing, reallocating, or asserting development costs without approval, transparency, or substantiation, thereby undermining the parties' agreed cost and profit-sharing framework;

    c. Withholding, restricting, or removing BRS's access to code repositories, publishing dashboards, platform accounts, and player account services, impeding BRS's ability to perform, audit, or realize the benefits of the venture;

    d. Refusing to provide supporting documentation and financial records necessary for reconciliation and distribution of profits;

    e. Implementing or threatening actions that disrupted gameplay services and account access, damaging the DIRT TRACKIN brand and customer goodwill and depriving BRS of the fruits of the Partnership.

109. FSG's conduct was unreasonable, arbitrary, and undertaken to appropriate partnership value and leverage control rather than to further the parties' mutual interests under the Partnership.

110. As a direct and proximate result of FSG's breach of the implied covenant, BRS has sustained damages, including lost revenues, increased costs, loss of goodwill, and other consequential and incidental damages, in amounts to be proven at trial.

111. At a minimum, the damages exceed $75,000, exclusive of interest and costs.

112. BRS is also entitled to equitable relief to prevent further breaches, including an order restoring access to accounts, code, and services necessary to protect the DIRT TRACKIN products and brand.

### Count 4:
### Dissolution of Partnership & Accounting under Illinois law
### [805 ILCS 206/405(a),(b)(2)(iii)]

113. BRS restates and incorporates by reference all its allegations detailed above.

114. BRS and FSG formed the Partnership to develop the DIRT TRACKIN games.

115. The Partnership was formed in Illinois.

116. As detailed in Count 3, FSG breached its fiduciary duties to BRS.

117. FSG also publicly announced that it was no longer in a partnership with BRS on or about November 1, 2025.

118. FSG's conduct makes it not reasonably practicable to carry on the Partnership in conformity with the parties' agreement specified in Paragraphs 34–36.

119. In particular, FSG has:

   a. demanded and accrued development 'costs' without Partnership approval or substantiation and insisted on unilateral compensation, thereby undermining the agreed equal sharing of profits and losses;

   b. exercised unilateral control over launch timing, pricing, platform selection, and game-breaking code changes for the DIRT TRACKIN

17

      games despite BRS's objections, thereby depriving BRS of its agreed right to jointly manage key business decisions; and

    c. refused or restricted BRS's access to code repositories, platform and publisher accounts, and player account services, and shut down player and multiplayer accounts without BRS's consent, thereby denying BRS its agreed joint control over key Partnership assets.

120. As a result, the Partnership cannot continue and should be dissolved, with an accounting and distribution of assets.

## Prayer for Relief

Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff and against Defendant on all counts;

B. Permanently enjoin and restrain the Defendant, and each of its agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from using the DIRT TRACKIN mark in connection with mobile or console games in the U.S., including use of DIRT TRACKIN on Defendant's website and on Nintendo's platform;

C. Order the transfer of all accounts and listings for the DIRT TRACKIN games to Plaintiff (including but not limited to Nintendo, Apple App Store, Google Play, and similar platforms);

D. Under 15 U.S.C. § 1116(a), direct Defendant to file with the Court and serve on Plaintiff within thirty days after issuance of an injunction, a report in writing

and under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction;

E.  Under 15 U.S.C. § 1118, require that Defendant and all others acting under Defendant's authority, at their cost, be required to deliver up and destroy all devices, literature, advertising, labels and other material in their possession bearing the DIRT TRACKIN mark;

F.  Award Plaintiff all damages it sustained as the result of Defendants' acts of infringement and unfair competition under 15 U.S.C. § 1117;

G.  Award Plaintiff all profits received by Defendant from sales and revenues of any kind made because of its infringing actions under 15 U.S.C. § 1117;

H.  Award Plaintiff its attorney's fees under 15 U.S.C. § 1117 and as otherwise permitted by law;

I.  Award Plaintiff its costs under 15 U.S.C. § 1117;

J.  Declare that the DIRT TRACKIN 3 game is a joint work co-owned by Plaintiff and Defendant, and that Plaintiff has not infringed any of Defendant's copyrights in the DIRT TRACKIN 3 game;

K.  Award Plaintiff its full costs and reasonable attorney's fees under 17 U.S.C. § 505 and as otherwise permitted by law;

L.  Award Plaintiff all damages resulting from Defendant's breach of fiduciary duty under Illinois law to be determined at trial;

19

M.    Order a full accounting of the Partnership's assets, liabilities, revenues, and expenses, including all platform accounts (Nintendo, mobile app stores, and related services);

N.    Dissolve the Partnership;

O.    Award Plaintiff its costs under Federal Rule of Civil Procedure 54 and as otherwise permitted by law;

P.    Grant such other relief as the Court deems just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all issues so triable as of right under Federal Rule of Civil Procedure 38.

Dated: February 23, 2026

> Respectfully submitted,
> Plaintiff, Bennett Racing Simulations, LLC, by:
>
> /s/John T.D. Bathke
> John T.D. Bathke (IL 6305438)
> Phillips & Bathke, P.C.
> 53 West Jackson Blvd
> Suite 1126
> Chicago, Illinois 60604
> Tel: (312) 221-3000
> Email: jtdb@pb-iplaw.com
> *Counsel for Plaintiff*